IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RANDOLPH BAGGETT,

      Plaintiff,

v.                                                                        CASE NO. 4:13-cv-626-WS-GRJ

C. WAYNE GREEN, et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

      Pending before the Court is Defendants' Motion to Dismiss. Doc. 27. Plaintiff filed a Response to the Motion to Dismiss, Doc. 34, and, therefore, the motion is ripe for review. For the reasons discussed below, Defendants' Motion to Dismiss is due to be granted in part and denied in part.

## I.  BACKGROUND AND PROCEDURAL HISTORY

      Plaintiff is a prisoner in the Florida Department of Corrections (FDOC). Doc. 8 at 5. Plaintiff alleges that he has subscribed to a publication known as "Guitar World" (GW) since April of 2007. *Id.* at 6. Plaintiff further alleges that some editions of GW contain a hand sign known as the "devil's horns" that is created when one "extend[s] the index finger and pinkie [while] folding the two fingers between them down toward the palm." *Id.* Plaintiff notes that this hand gesture has various meanings depending on the context in which it is used, including, *inter alia*, "Rock On!" in the American music context and "MS-13!" in the American street gang context. *Id.* Plaintiff claims that the FDOC Literature Review Committee (LRC) – the institutional body responsible for reviewing publications prior to their admission into the state prison system – has

approved admittance of GW editions containing the devil's horns in the past but has recently and wrongfully rejected GW editions containing the same hand gesture. *Id.* at 6–6D. Plaintiff argues that the devil's horns hand gesture in GW obviously refers to "Rock On," not "MS-13." *Id.* at 6. Consequently, Plaintiff claims that the LRC has no constitutional or other legal authority to reject GW editions containing the devil's horns. *See id.* at 7. Additionally, Plaintiff concedes that the FDOC—or at least his institution—has a ban on posters larger than 8.5" x 10", *id.* ¶ 31, but claims that the LRC enforces this provision irregularly, *see id.* at 6B–6D.

In essence, Plaintiff contends that Defendants, members of the LRC during the time in question, unreasonably and inconsistently rejected editions of GW because they contained the devil's horns and, sometimes, posters larger than 8.5" x 10". *Id.* at 7. This, according to Plaintiff, is an unconstitutional application of Rule 33-501.401 of the Florida Administrative Code in that his right to free speech is being limited in an arbitrary and exaggerated manner that is not reasonably related to legitimate penological interests.[1] *Id.* Plaintiff brought this action under 42 U.S.C. § 1983 and seeks declaratory and injunctive relief as well as nominal damages for the alleged constitutional violation of his civil rights. *Id.* at 1, 7B.

---

[1] This rule grants the FDOC and its entities discretion in rejecting incoming publications that are considered to be "detrimental to the security, order or disciplinary or rehabilitative interests of any institution." Fla. Admin. Code. r. 33-501.401(3) (2014). The provision lists criteria that may serve as a basis for rejecting incoming publications. *See id.* Gang signals and motifs fall squarely into one or more of the enumerated criteria. *See id.* at r. 33-501.401(3)(e), (g), (m).

Defendants have moved to dismiss the action for failure to state a claim. Doc. 27. Defendants claim that Plaintiff's complaint should be dismissed because (1) Plaintiff failed to exhaust all available administrative remedies for all but one rejected edition of GW; (2) Plaintiff lacks standing to base claims on rejected editions of GW which he, for unknown reasons, received anyway; (3) Plaintiff generally fails to state a claim under Rule 12(b)(6); (4) Defendants possess qualified immunity in their individual capacity; and (5) Eleventh Amendment immunity protects Defendants from money damage claims in their official capacity.[2] *Id.*

## II. STANDARD OF REVIEW

### A. Motion to Dismiss Standard

For purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom.  *See, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994). "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings."  *Hopkins v. Saint Lucie County School Bd.*, 399 Fed. Appx. 563, 565 (11th Cir. 2010) (citations omitted) (applying pleading standards of *Iqbal* and *Twombly* to a *pro se* complaint). Furthermore, the Court must

---

[2] Plaintiff now concedes that Eleventh Amendment immunity shields Defendants from money damages in their official capacities. Doc. 34 at 8. This is the correct disposition as "the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court," and this protection extends to "state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C.A. § 1983." *Gamble v. Fla. Dept. of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1511–12 (11th Cir. 1986).

limit its consideration to the complaint and written instruments attached as exhibits. Fed R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of the claims, then the complaint is subject to dismissal. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680–84 (2009) ("*Twombly* expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, a complaint must allege facts sufficient to move claims "across the line from conceivable to plausible.")

## B. Standing

Article III of the United States Constitution limits federal jurisdiction to only "cases and controversies." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Where a plaintiff lacks standing, the federal court lacks subject matter jurisdiction and must dismiss the case.

*Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011).

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Thus, a party invoking federal jurisdiction must have a personal stake in the in the litigation. *Id.* at 189.

Similarly, the "cases and controversies limitation" in Article III prevents federal courts from deciding moot issues. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).  "To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Id.* The mootness requirement is excused for "disputes capable of repetition, yet evading review." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 735 (2008) (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). This exception applies where (1) the duration of the challenged action is too short such that it likely expires or ceases prior to full adjudication and (2) it can be reasonably expected that the complaining party will be subject to the same action again in the future. *Id.*

## C. Exhaustion Requirement

The Prison Litigation Reform Act (PLRA), requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions.

42 U.S.C.§ 1997e(a) (2013).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock,* 549 U.S. 199, 211 (2002). Further, the PLRA's exhaustion requirement contains a procedural default component: Prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures.  *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005).  "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies and, thus, is foreclosed by § 1997e(a) from litigating . . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

While administrative exhaustion is generally a prerequisite to filing a § 1983 claim, the requirement may be satisfied or waived if prison officials prevent the prisoner from seeking administrative remedies. *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004). "A remedy has to be available before it must be exhausted. . . . Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008); *see, e.g.*, *id.* at 1085 (lifting the exhaustion requirement because of a prison official's "serious threats of substantial retaliation" for filing an administrative grievance). However, conclusory allegations of retaliation do not satisfy the *Turner* standard, and prisoners making this argument must "identif[y] any actual threats of retaliation . . . that

would deter an 'inmate of ordinary firmness' from pursuing a remedy." *Williams v. Barrow*, 559 Fed. Appx. 979, 988 (11th Cir. 2014) (quoting *Turner*, 540  F.3d at 1085).

Administrative exhaustion is a precondition to commencing suit under the PLRA. Consequently, a motion to dismiss a claim regarding exhaustion is a matter in abatement and not an adjudication on the merits. *See Bryant v. Rich*, 530 F.3d 1368, 1374–76 (11th Cir. 2008) (collecting authority). As such, PLRA exhaustion defenses are generally analyzed using the subject matter jurisdiction standard of Rule 12(b)(1). *See id.* at 1376; *Turner*, 541 F.3d at 1082 ("This means that procedurally the defense is treated 'like a defense of lack of jurisdiction,' although it is not a jurisdictional matter."). Because exhaustion is treated as a matter in abatement, the court may consider facts outside of the pleadings and resolve pertinent factual disputes. *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Turner*, 541 F.3d at 1082. If those facts show a failure to exhaust available administrative remedies, the defendant is entitled to dismissal. *Id.* "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* Once the factual findings are made by the court, it may then decide whether the prisoner had exhausted all available administrative remedies. *Id.*

**D. Qualified Immunity Protection**

The doctrine of qualified immunity protects state officials sued in their individual capacity from civil damages to the extent "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, the Supreme Court has fashioned a two-pronged test to determine if qualified immunity applies: (1) whether the facts as alleged by the plaintiff establish a constitutional violation and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* Courts retain discretion as to the order in which these prongs should be addressed. *Id.* at 237.

A plaintiff must show that his or her aggrieved right was clearly established at the time of the incident by (1) showing that a case materially similar to the issue at hand has been decided, such that the official has notice of the right, (2) showing that a broad and clearly established principle governs the novel facts of the situation, or (3) showing that the conduct "so obviously violates thr constitution that prior case law is unnecessary." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). Further, case law interpreting the right must be authored by the United States Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida. *Id.*

### III. DISCUSSION

**A.  Plaintiff has stated a claim.**

Defendants contend that the regulation at issue, Fla. Admin. Code. r. 33-501.401(3) (2014), grants the LRC wide discretion in rejecting publications it deems to

be" detrimental to the security, order or disciplinary or rehabilitative interests of any

institution." Further, relying upon *Thornburgh v. Abbott*, 490 U.S. 401 (1989), and

related case law, Defendants argue that regulations granting wide discretion to penal

institutions in rejecting publications are constitutional because they are geared toward

excluding material that may cause disorder in the prison system. Doc. 27 at 8.

    Defendants also point to Plaintiff's concession that the devil's horns, in some

instances, can signify a gang sign representing the street gang known as MS-13.[3] *Id.*

Defendants also cite to case law showing that a prison's rejection of publications

containing gang-related materials are properly excluded from the prison setting. *Id.* at

8–9.

    While Defendants are correct that a prison may reject publications containing

gang related materials, there is an issue in this case as to whether the publications

contain a gang related symbol or simply a symbol signifying a non-gang related

meaning. This determination necessarily involves a factual determination unsuitable for

the motion to dismiss stage. Notably, while a motion to dismiss can be converted to a

motion for summary judgment, the Court cannot do so here because the Defendants

have not submitted evidence demonstrating a nexus between a sign representing the

MS-13 gang and the LRC's penological interest in rejecting a publication containing

such a sign. In other words, the Defendants have not shown that the presence of MS-

---

[3] While the Plaintiff claims that the context in which the devil's horns hand gesture is found has bearing on the interpretation and meaning of the sign, the LRC is within its discretion when it determines, based on the presence of the hand gesture, that the gesture may cause disorder in the prison setting. *See* Doc. 27 at 9.

13-related material—or even MS-13 members—in the prison setting would be detrimental to the state's penological interests. While the Court no doubt believes that Defendants may be able to present such evidence they have not done so at this stage of the case. Consequently, Defendants' motion to dismiss for failure to state a claim should be denied.

## B. Plaintiff has standing

Plaintiff brought this suit because of the alleged unlawful rejection of three editions of GW: the August 2013, September 2013, and October 2013 editions. Doc. 8 at 6B–6C. Defendants claim that Plaintiff lacks standing as to the August 2013 edition of GW because Plaintiff eventually received the August 2013 edition. Doc. 27 at 7. Defendants contend that receiving the publication eliminates any controversy as to that particular edition, stripping the federal courts of jurisdiction under Article III of the U.S. Constitution. *Id.*

In his Response, Plaintiff admits receiving the August 2013 *and* October 2013 editions of GW, but claims that this receipt does not render the controversy resolved. Doc. 34 at 2. Plaintiff points out that the publications that have been rejected are deemed contraband under the Florida regulations and, as such, are subject to confiscation. *Id.* Further, Plaintiff argues that this injury is one that is subject to reoccurrence and, therefore, the court must exercise jurisdiction to prevent further transgressions. *Id.* at 3.

Plaintiff has standing, and the rejected but delivered editions do not moot the controversy or eliminate injury for purposes of standing because the rejected but

delivered editions of GW continue to be labeled as contraband and are, therefore, subject to confiscation at the whim of the prison officials. This constitutes a continuing harm that is subject to being remedied through the court system. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).  Because continuing harm is present, the court need not address whether the actions in this case fall within the mootness exception for "disputes capable of repetition, yet evading review." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 735 (2008).

The Court, therefore, concludes  that Plaintiff has standing to bring claims relating to the August 2013 and October 2013 editions of GW as the claims are not mooted by the receipt of the publications. Thus, Defendants' argument that these claims should be dismissed for lack of standing should be rejected

**C.    Two claims should be dismissed because Plaintiff failed to exhaust all available administrative remedies.**

Notwithstanding the Court's determination that Plaintiff's complaint should not be dismissed for failing to state a cause of action, and the Court's determination that Plaintiff has standing to challenge the rejection of the August and October 2013 editions of GW, Plaintiff's claims relating to the rejection of the August and October 2013 editions of GW are due to be dismissed for failing to exhaust his administrative remedies as to these editions.

Under the Florida regulations governing admissible inmate reading material, when the LRC rejects a publication, the publication is not issued to the inmate and is impounded. Fla. Admin. Code r. 33-501.401(7) (2014). The inmate is notified of the

rejection in writing on Form DC5-101, Notice of Rejection or Impoundment of Publications, within 15 days of the publication's rejection. *Id.* When a publication is impounded or rejected pursuant to subsection (3) of the regulation—meaning the LRC determined it to be "detrimental to the security, order or disciplinary or rehabilitative interests" of the institution—an inmate may appeal the impoundment or rejection. *Id.* at r. 33-501.401(13)(b). The appeal must bypass the informal and formal institutional level of review and must be filed directly with the office of the secretary in conformance with Rule 33-103.007. *Id.* Both Rules 33-501.401(13)(b) and 33-103.107 provide additional procedural requirements. See *id.*; *id.* at r. 33-103.107(6)(a).

In this case, the record shows that Plaintiff only filed an administrative appeal under Rule 33-501.401(13) as to one rejected edition of GW – the September 2013 edition. Doc. 27, Ex. A. This administrative appeal was denied. *Id.* In addition to the September 2013 edition of GW that was rejected, Plaintiff claims that the August 2013 and October 2013 editions of GW were wrongfully rejected because of the devil's horns. Doc. 8 at 6B–6C. Plaintiff, however, did not file any administrative appeals as to these editions. *See* Doc. 27, Ex. A.

Defendants seek to dismiss claims related to the August 2013 and October 2013 editions of GW because Plaintiff failed to file an administrative appeal with respect to each edition. Doc. 27 at 7. In his Response, Plaintiff argues that the PLRA's exhaustion requirement should be satisfied as to these editions of GW because the appeals process was made unavailable as to these rejected editions. Doc. 34 at 1. Specifically, Plaintiff says that the procedure for grieving a rejection of a publication requires the

complainant to attach the notice of rejection, Form DC5-101, to the formal grievance. *Id.* at 1–2. Plaintiff claims that he did not receive a Form DC5-101 notifying him that the August 2013 and October 2013 editions of GW had been rejected and, therefore, he could not submit a proper grievance as prescribed by the rules. *Id.*

While the FDOC was required to provide Plaintiff with a Form DC5-101, and Plaintiff is required to attach Form DC5-101 to his grievance, *see* Fla. Admin. Code r. 33-501.401(13)(b)(3) ("A copy of the Form DC5-101 . . . must be attached to the grievance"), the prison's failure to provide Plaintiff with a Form DC5-101 for the August 2013 and October 2013 editions of GW did not foreclose Plaintiff's ability to grieve the matters.[4]  Plaintiff could have filed the grievance without the Form DC5-101 and simply noted that he never received the formal notice. Additionally, Plaintiff could have filed an informal grievance under Rule 33-103.005 requesting that he be provided with a Form DC5-101 for each rejected edition so that he could properly grieve the matter. Plaintiff simply did nothing to grieve the rejection of these publications.

The fact that Plaintiff says he did not receive the proper documentation to attach to his administrative appeal grievance does not mean that the entire administrative grievance process was unavailable to him. The exception to exhaustion, where the prison prevents an inmate from pursuing the administrative appeals process is applicable to situations where the inmate is prevented from pursuing his administrative

---

[4] It is unclear from the record how Plaintiff became aware of these editions' rejection or if they were even rejected by the LRC. Plaintiff notes that he eventually received the two editions in question. *See* Doc. 8 at 6B–6C. For purposes of this motion, however, the Plaintiff's factual allegations are taken as true. *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998).

appeals or is completely ignored by authorities and not, as here, where an inmate did not receive a form from prison officials.  *E.g.*, *Turner v. Burnside*, 541 F.3d 1077, 1084–85 (11th Cir. 2008) (holding a remedy as being unavailable where prison officials threatened an inmate with retaliation if the inmate was to file an administrative grievance); *Donawa v. Gilmore*, 559 Fed Appx. 968, 969 (11th Cir. 2014) (holding remedy as being unavailable where inmate was allegedly "threatened and retaliated against for the administrative complaints he did pursue"); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (holding a remedy as being unavailable where prison officials allegedly prevented the plaintiff from employing the grievance process by ignoring requests for grievance forms).

 In contrast to these cases,  Plaintiff was well aware of the proper avenue for grieving the rejection of these issues as evidenced by the fact that he grieved the rejection of the September 2013 edition of GW. Further, Plaintiff was aware that the August and October 2013 editions of GW had been rejected and, thus, even though he says he did not receive Form DC5-101, he was still required to grieve the rejection of these claims as a precondition to pursuing relief under § 1983.

Accordingly, the Court concludes that Plaintiff failed to exhaust all available administrative remedies as to the August 2013 and October 2013 editions of GW. As such, Defendants' motion to dismiss these claims should be granted.

**D.  Qualified Immunity**

Lastly, Defendants argue that qualified immunity serves to shield them from liability because Plaintiff has not shown that (1) his factual allegations make out a

constitutional violation and (2) that the constitutional violation was clearly established. Doc. 27 at 10.

As discussed above, *see supra* Part III.A., to determine whether the actions by the LRC are constitutional the Court must determine whether there is a nexus between the actions of the prison officials and the penological interests of the state. Likewise, to determine whether the constitutional violation was clearly established would require further development of the record to show that MS-13 is a gang that is a danger to the orderly administration of the prison.  While the Court has no doubt that the Defendants may be able to make such a showing, the record at this juncture of the proceedings is devoid of any evidence (by affidavit or otherwise), documenting that MS-13 is a gang that is a danger to the orderly administrative of the prison. Without such evidence the Court cannot determine whether the actions of the LRC are constitutional. This question can be addressed promptly at the summary judgment stage if the Defendants submit an appropriate affidavit detailing that MS-13 is a gang and explaining that it is a gang that is detrimental to the orderly administration of the prison. Consequently, Defendants' motion to dismiss based on qualified immunity is due to be denied without prejudice to raising the argument on summary judgment.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion to Dismiss, Doc. 27, should be **GRANTED in part and DENIED in part.** Plaintiff should be permitted to proceed only on his claim that the rejection of the September

2013 edition of GW pursuant to the Florida Administrative Code was applied

unconstitutionally to Plaintiff in violation of the First Amendment.

　　　　**IN CHAMBERS** this 21st  day of October 2014.

*s/Gary R. Jones*
　　　　　　　　　GARY R. JONES
　　　　　　　　United States Magistrate Judge

**NOTICE TO THE PARTIES**

　　　　**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**